**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIAN DAVIS and SUSAN DAVIS,** | : | No. 3:24cv328 |
| **Plaintiffs** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **NATIONWIDE MUTUAL INSURANCE** | : | |
| **COMPANY,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Underinsured motorists (UIM) coverage provides "protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 PA. CONS. STAT. § 1731(c).  It "help[s] defray the cost of an accident" when tortfeasors have minimal or insufficient bodily injury liability coverage. See Gibson v. State Farm Mut. Auto. Ins. Co., 994 F.3d 182, 184 (3d Cir. 2021).

Under the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 PA. CONS. STAT. §§ 1701–1799.7, insurers must offer UIM coverage when issuing an auto insurance policy up to an amount equal to the limits for bodily injury liability coverage.  75 PA. CONS. STAT. §§ 1731(a), 1734, 1736.  However, the purchase of UIM coverage by insureds is optional. 75 PA. CONS. STAT. § 1731(a).  A named insured may reject UIM benefits, subject to

certain requirements. 75 PA. CONS. STAT. § 1731(c),(c.1).  Furthermore, a named

insured may make a written request that an auto policy with UIM coverage be

issued in an amount equal to or less than the limits of liability for bodily injury. 75

PA. CONS. STAT. § 1734; see also Geist v. State Farm Mut. Auto. Ins. Co., 49

F.4th 861, 864 (3d Cir. 2022) (citing Gibson, 994 F.3d at 187).  Pennsylvania law

provides different requirements for rejecting UIM coverage versus selecting an

amount of UIM coverage if purchased.

Plaintiffs Brian Davis and Susan Davis bring this declaratory judgment

action against Defendant Nationwide Mutual Insurance Company ("Nationwide"),

disputing the total amount of UIM coverage available under their policy.  Before

the court are cross-filed motions for summary judgment.  Nationwide stands firm

in its prelitigation position that Plaintiff Brian Davis executed a valid written

request to reduce his UIM coverage below his bodily injury limits using a sign-

down form.  Plaintiffs dispute that this form applies to the Nationwide policy that

was in place when they made a UIM claim.

**Background**

On September 8, 2022, Plaintiff Brian Davis sustained injuries in an auto

accident in South Abington Township, Lackawanna County, Pennsylvania. [1]

---

[1] Unless otherwise noted, the factual background derives from the parties' statements of
material facts (hereinafter "Pl. SOF" and "Def. SOF") filed pursuant to the Rules of Court for
the Middle District of Pennsylvania. (Docs. 19, 21-2).  To the extent the parties' statements are

(Doc. 19, Pl. SOF ¶ 3).  At the time, plaintiffs were insured with Nationwide under policy number 5837J 261 208 (hereinafter "One Product policy") with an effective period of August 28, 2022 to February 28, 2023. Id. ¶ 6.  The tortfeasor's insurance company tendered her bodily injury liability limits of $20,000 and plaintiffs accepted with the consent of Nationwide. Id. ¶ 4.  After receiving payment from the tortfeasor's policy, plaintiffs then turned to their own UIM coverage with Nationwide.

The operative declarations page for the One Product policy reflects that, on the date of the accident, plaintiffs carried $300,000 in bodily injury coverage for each person/each occurrence in the event of their own liability. (Doc. 20-2, Pl. Ex. 2 at ECF p. 8–10).  The declarations page further indicates that plaintiffs' UIM limits were $15,000 each person/$30,000 each occurrence (non-stacked) in the event of an accident with an underinsured motorist. Id.  To date, Nationwide has paid plaintiffs $45,000 in stacked UIM benefits. [2] (Doc. 21-2, Def. SOF ¶ 44).

---

undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts. The court reviews the evidence in the light most favorable to the non-moving party with respect to each motion. See Lawrence v. City of Philadelphia, Pa., 527 F.3d 299, 310 (3d Cir. 2008) (explaining that the summary judgment standard is no different when there are cross-motions for summary judgment).

[2] Plaintiffs' complaint, initially filed in the Lackawanna Court of Common Pleas, alleged that Nationwide relied upon certain forms to assert that plaintiffs only had $15,000 in UIM coverage. (Doc. 1-2 ¶¶ 30, 33).  The original complaint maintained two causes of action, one for a declaratory judgment and one for bad faith. Id. ¶¶ 27–38.  After removal of the action by Nationwide, (Doc. 1), defendant filed an answer attaching a UIM stacking rejection form. (Doc. 4-1 at ECF p. 5).

Plaintiffs had been insured with Nationwide for many years at the time of the accident. (Doc. 19, Pl. SOF ¶¶ 7–9). On August 31, 2001, and in conjunction with a policy bearing the number 58D362739 ("prior policy"), Brian Davis signed a document entitled "Important Notice" containing language mandated by the MVFRL in 75 PA. CONS. STAT. § 1791 ("1791 Notice"). (Doc. 21-2, Def. SOF ¶ 3; see also Doc. 21-24, Def. Ex. S at ECF p. 32). The 1791 Notice advised Davis that insurance companies were required by law to make UIM coverage available for purchase up to at least $100,000 per person and $300,000 per occurrence. (Doc. 21-24, Def. Ex. S at ECF p. 32). This form further advised that insurers may offer higher benefit levels and that insureds may elect to purchase lower benefit levels. Id. Just above Brian Davis's signature, the 1791 Notice states: "Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of

---

By stipulation, plaintiffs filed an amended complaint on May 21, 2024, which withdrew the bad faith claim. (Doc. 13). The amended complaint continued to allege that Nationwide improperly provided plaintiffs with $15,000 in UIM coverage. Id. ¶¶ 30, 33. Nationwide filed an answer to the amended complaint likewise attaching the UIM stacking rejection form as an exhibit. (Doc. 14-2, at ECF p. 4).

Between May 2024 and November 2024, when the instant motions for summary judgment were filed, Nationwide either unilaterally paid $45,000 to plaintiffs in stacked UIM coverage or the parties mutually agreed to resolve the stacking issue. (See Doc. 21-2, Def. SOF ¶ 44). The court will consider that issue resolved and will not draw any inferences in favor or against either party when considering the cross-motions for summary judgment.

4

the availability of these benefits and limits as well as the benefits and limits you selected." Id. (capitalization removed).

From that time, the prior policy renewed for successive policy periods through and including a policy period ending on August 31, 2020. (Compare Doc. 21-2, Def. SOF ¶ 3 with Doc. 25, Pl. Resp. to Def. SOF ¶ 3).   In that period of approximately 20 years, Brian Davis also signed multiple documents evidencing his election of UIM coverage below his bodily injury limits, including on January 25, 2019. (Doc. 21-24, Def. MSJ Ex. S at ECF pp. 37, 45, 53, 60, 63).   The parties refer to these documents as sign-down forms.

The prior policy then changed to the One Product policy as the result of Nationwide's business decisions, i.e., something defendant called its One Product Initiative.[3] (Doc. 20-6, Pl. MSJ Ex. 6, B. Ryan Dep. 21:3–23:2).   On June 25, 2020, as part of the One Product Initiative, Nationwide sent plaintiffs a "Notice of Policy Change" document. (Doc. 19, Pl. SOF ¶ 17 (typographical error corrected)).   That document included "clarifications" of certain policy terms. (Doc. 20-5, Pl. MSJ Ex. 5 at ECF p. 3).   Plaintiffs argue that these clarifications were really changes which reduced coverage overall.   Further, plaintiffs argue

---

[3] According to Nationwide's representative, the One Product Initiative "was a countrywide effort to reduce [Nationwide's] offerings across each of [its] states." (Doc. 21-18, B. Ryan Dep. 66:16–67:5).   One Product also resulted in "one…policy contract in one platform to issue off of." Id.

that the One Product policy was, in fact, a new policy based on these changes. In this action, plaintiffs request a declaration reforming the One Product policy to provide UIM coverage equal to their bodily injury liability coverage at the time of the accident, i.e., $300,000 per person. They also seek to have this amount stacked by three vehicles covered under the policy to set the limits at $900,000 in total UIM coverage.

Despite the changes instituted by Nationwide to their auto insurance policy, plaintiffs accepted the One Product policy and renewed that policy at least four times between August 2020 and the accident in September 2022.  Nationwide thus argues that the UIM reduction form and 1791 Notice signed by Brian Davis remain effective and preclude the declaratory relief sought in this action.

The cross-motions for summary judgment center on whether the sign-down form executed by Plaintiff Brian Davis in 2019 under the prior policy legally effectuated a reduction of plaintiffs' UIM coverage with respect to the One Product policy in place at the time of the accident in 2022.  The issues in this case have been well-briefed and are ripe for disposition.

**Jurisdiction**

Pursuant to the diversity jurisdiction statute, federal courts have original jurisdiction over civil actions in which the controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1).  Plaintiffs are citizens

of the Commonwealth of Pennsylvania. (Doc. 1, Notice of Removal ¶ 9(a)).

Nationwide is an Ohio corporation with its principal place of business in

Columbus, Ohio.  (Doc. 1-4, Notice of Removal, Ex. C).  The amount in

controversy is the difference between $900,000 and $45,000 in UIM coverage

under the One Product policy in place at the time of the accident, or $855,000.

Because complete diversity of citizenship exists among the parties and the

amount in controversy exceeds $75,000, the court has jurisdiction over this case.

As a federal court sitting in diversity, the substantive law of Pennsylvania

shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d

Cir. 2000) (citing Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).  The specific

issue involved in this case has not been addressed by the Pennsylvania

Supreme Court or the lower courts within the Commonwealth.  Where no

reported decision of the Pennsylvania Supreme Court or any other Pennsylvania

court addressing the precise issue exists, it is the duty of a district court judge to

predict how the Pennsylvania Supreme Court would interpret relevant provisions

of the MVFRL if presented with this case. Nationwide Mut. Ins. Co. v. Buffetta,

230 F.3d 634, 637 (3d Cir. 2000).  In making that prediction, the decisions of

intermediate Pennsylvania appellate courts receive significant weight in the

absence of an indication that the highest state court would rule otherwise. See

SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 204 (3d Cir. 2022) (citations

7

and quotation marks omitted).  In predicting how the Supreme Court of Pennsylvania would resolve the issue, the court "must consider 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.' " Buffetta, 230 F.3d at 637 (quoting McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 663 (3d Cir. 1980)).

Additionally, plaintiffs seek a declaratory judgment in a case involving interpretation of state law.  This federal district court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201–2202.  The DJA provides that: "In a case of actual controversy within its jurisdiction…any court of the United States, upon filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a) (emphasis added).  Although the statute confers the court with discretion to stay or dismiss a declaratory judgment action that is properly within the court's subject matter jurisdiction, the parties have not disclosed any parallel proceedings in state court.  Thus, after balancing the requisite factors, the court does not believe that abstention is warranted in this matter and will proceed to address the merits of the parties' arguments with respect to the plaintiffs' requested declaration. See DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co., 10 F.4th 192, 196 (3d Cir. 2021); see also

8

United States v. Defreitas, 29 F.4th 135 141 (3d Cir. 2022) ("[F]ederal courts are often required to make faithful predictions of how a state supreme court will rule.") (citing City of Houston, Texas v. Hill, 482 U.S. 451, 470–71; Erie R.R. Co, 304 U.S. at 78).  Federal courts within the Commonwealth have been called upon time and time again to interpret the MVFRL against a novel set of facts. This case is no different.

**Standard of Review**

Before the court are cross-filed motions for summary judgment.  Granting summary judgment is proper " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " See Knabe v. Boury Corp., 114 F.3d 407, 410 n. 4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)).  "A fact is material if it might affect the outcome of the suit under the governing substantive law." Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 538 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  "When both parties move for summary judgment, the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 402 (3d

Cir. 2016) (cleaned up).  The Rule 56 standard does not change in the context of cross-filed motions. See id. (quoting Appelmans v. City of Philadelphia, 826 F.2d 214, 216 (3d Cir. 1987)).

**Analysis**

The parties do not dispute the material facts in this case.  It is undisputed that Plaintiff Brian Davis signed and dated a form reducing his UIM coverage below his bodily injury limits on January 25, 2019, and that he was involved in an auto accident with an underinsured motorist on September 8, 2022.  In between those two points, Nationwide implemented its One Product Initiative as its customers renewed their auto policies.  This implementation resulted in changes, including to the plaintiffs' policy number.  In its determination regarding plaintiffs' UIM coverage, Nationwide relied upon on a sign-down form executed by Brian Davis under the prior policy and not the One Product policy.  Plaintiffs reject the validity of that form and seek reformation of the operative policy to afford them UIM limits of up to $900,000 as of the date of the accident.[4]  Consequently, the only question posed by the cross-motions is the coverage limit for UIM benefits under the One Product policy in effect on September 8, 2022.  Based on the

---

[4] As noted in the background section of this memorandum, the parties have resolved the issue regarding stacking. (Doc. 21-2, Def. SOF ¶ 44).

undisputed material facts, this is a question of law that can be properly decided at the summary judgment stage.

The legal arguments presented by the parties are not all that complex. In its motion for summary judgment, Nationwide relies on three provisions of the MVFRL, Sections 1731, 1734, and 1791, and case law applying these statutes to various facts. Plaintiffs essentially make three arguments supporting the same premise: Nationwide's One Product policy was a new policy and thus Nationwide had to re-comply with its obligations under the MVFRL. In making their case, plaintiffs rely extensively on a decision from the Western District of Pennsylvania, McGuire v. Nationwide Affinity Ins. Co. of Am., No. 2:23-CV-1347, 2024 WL 4150098 (W.D. Pa. Sept. 11, 2024) (Ranjan, J.), reconsideration denied, 2025 WL 723203 (W.D. Pa, March 6, 2025), appeal filed, No. 25-1789 (3d Cir.). Prior to a discussion about McGuire, some additional detail about the MVFRL is required. Despite plaintiffs' reliance on McGuire, a decision from a sister jurisdiction, the court must predict how the Supreme Court of Pennsylvania would decide the legal issues when faced with the undisputed facts in this case.

### 1. Sections 1731, 1734, and 1791 of the MVFRL

The MVFRL "is comprehensive legislation governing the rights and obligations of the insurance company and the insured under liability insurance policies covering motor vehicles." Sayles v. Allstate Ins. Co., 219 A.3d 1110,

1124 (Pa. 2019) (quoting <u>Erie Ins. Exch. v. Dzadony</u>, 39 Pa. D. & C.3d 33, 36

(Allegheny Cnty. Ct. Comm. Pl. 1986) (Wettick, J.)).  The MVFRL requires

insurers to offer UIM coverage to insureds but does not require insureds to

purchase that coverage.  <u>Ford v. Am. States Ins. Co.</u>, 154 A.3d 237, 238 (Pa.

2017).  The relevant portion of Section 1731 provides:

> No motor vehicle liability insurance policy shall be
> delivered or issued for delivery in this Commonwealth, with
> respect to any motor vehicle registered or principally
> garaged in this Commonwealth, unless uninsured motorist
> and underinsured motorist coverages are offered therein or
> supplemental thereto in amounts as provided in section
> 1734 (relating to request for lower limits of coverage).
>
> Purchase of uninsured motorist and underinsured motorist
> coverages is optional.

75 PA. CONS. STAT. § 1731(a) (spacing added).

The cross-referenced statute, Section 1734, allows for insureds to choose

their limits of UIM coverage if they decide to purchase such benefits.

Specifically, this section of the MVFRL states that: "A named insured may

request in writing the issuance of coverages under section 1731…in amounts

equal to or less than the limits of liability for bodily injury."[5] 75 PA. CONS. STAT. §

1734.

---

[5] Pennsylvania law requires "financial responsibility," 75 PA. CONS. STAT. § 1786(a), that is,
"the ability to respond in damages for liability" for automobile accidents, 75 PA. CONS. STAT. §
1702.  At a minimum, that "financial responsibility" includes bodily injury liability coverage of

Sections 1731 and 1734 "mean no more than what they state." <u>Geist</u>, 49 F.4th at 865 (citations omitted).  As for Section 1731(a), that provision "is a simple statement whose plain meaning is apparent from its language." <u>Nationwide Ins. Co. v. Resseguie</u>, 980 F.2d 226, 230 (3d Cir. 1992); <u>see also</u> <u>Blood v. Old Guard Ins. Co.</u>, 934 A.2d 1218, 1226 (Pa. 2007) (agreeing with this characterization).  "It mandates that an insurance company cannot issue a policy in the Commonwealth of Pennsylvania unless it provides UM/UIM coverage equal to the bodily injury liability coverage, except as provided in [Section] 1734." <u>Id.</u> (citation omitted).

Like Section 1731(a), the language of Section 1734 "is plain and the Pennsylvania General Assembly's intention is clear." <u>Id.</u>; <u>see also</u> <u>Blood</u>, 934 A.2d at 1226 (agreeing with this characterization); <u>Orsag v. Farmers New Century Ins.</u>, 15 A.3d 896, 901 (Pa. 2011) (reiterating that the language of Section 1734 is plain and unambiguous).  "By its terms, a named insured may

---

"$15,000 because of injury to one person in any one accident, [and] in the amount of $30,000 because of injury to two or more persons in any one accident." <u>Id.</u>

Pursuant to the MVFRL, an insurer issuing a policy of bodily injury liability coverage "shall make available for purchase higher limits of uninsured, underinsured and bodily injury liability coverages up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages." 75 PA. CONS. STAT. § 1792(a).

lower her statutorily provided UIM coverage limits by requesting in writing of her insurer to do so." Id.

Section 1734 does not specify the type of form or language required for the insured to opt for UIM coverage below their bodily injury liability limits. Erie Ins. Exch. v. Eachus, 306 A.3d 930, 933 (Pa. Super. Ct. 2023). Despite this lack of specification in the statute, a Section 1734 written request must include the signature of the insured and an express designation of the amount of coverage requested under Pennsylvania law. See Orsag, 15 A.3d at 901. Although this dispute involves a specific UIM sign-down document provided to Plaintiff Brian Davis by Nationwide or an agent, a written request for lower UIM benefits may take any form. See id.; Gibson, 994 F.3d at 188 (determining that written elections in insurance applications satisfy Section 1734's UIM reduction requirements). The only argument advanced by plaintiff here is that the January 25, 2019 sign-down form was invalid after Nationwide's implementation of the One Product policy. There is no argument from plaintiffs that the sign-down form itself did not comply with the requirements of Section 1734. Rather, on the face of the document, Brian Davis provided an electronic signature and expressly designated lower UIM limits of $15,000 per person/$30,000 per occurrence, which was below his bodily injury liability limits.

14

Continuing with the discussion of Sections 1731 and 1734, both provisions "were designed to be read together and according to their context within the guiding statutory framework of the MVFRL." Lewis v. Erie Ins. Exch., 793 A.2d 143, 149 (Pa. 2002). In Lewis, the Supreme Court of Pennsylvania extensively reviewed the MVFRL and its development, emphasizing the statute's directives regarding UIM coverage. Id. at 149–52. Of note, "[t]he enactment of and amendments to the MVFRL demonstrate a departure from the principle of maximum feasible restoration that was embodied in the No–Fault Act[,]" which had caused "spiraling costs of automobile insurance and the resultant increase in the number of uninsured motorists" in the ten years that the No-Fault Act had been in place. Id. at 149–51 & n.7. The MVFRL initially required insurers to include UIM coverage in all policies delivered or issued in Pennsylvania. Id. at 150. In 1990, however, the General Assembly amended the MVFRL to remove mandatory UIM coverage and made purchase of UIM coverage optional "to enhance the ability of insurers to control costs." Id. at 150. The review of Sections 1731 and 1734 in Lewis was thus "informed by their integration into a scheme for motorist insurance which has been adjusted to preserve the availability of core remedial aspects while also promoting, with increasingly greater emphasis, the containment of insurance costs." Id. at 152.

Consequently, "Sections 1731 and 1734 should be read *in pari materia* at least in the broadest sense, that is, as part and parcel of the MVFRL's comprehensive scheme for promoting financial responsibility in the motoring public and, more particularly, as relating to the provision of UIM coverage within the context of such scheme." Id. (citations omitted). Furthermore, the material differences in the subject matter of Section 1731 and 1734 "allow[] for differential treatment to the extent that this would appear to be legislatively intended." Id. at 153 (citing Pennsylvania's Statutory Construction Act of 1972, 1 PA. CONS. STAT. § 1932). In sum, the court must read these two statutes together but respect their differences.

The MVFRL treats an insured's outright rejection or waiver of UIM benefits differently than a request by an insured to reduce their UIM coverage below their bodily injury liability coverage. Section 1731 contains more detailed requirements regarding the rejection of UIM coverage, including legislative mandates that specifically worded forms be signed by the first named insured and dated. 75 PA. CONS. STAT. § 1731(c), (c.1). Rejection forms failing to comply with the statute are void. 75 PA. CONS. STAT. § 1731(c.1). Further, an insurer's failure to produce a valid UIM rejection form results in a clear legislative directive that UIM coverage "shall be equal to the bodily injury liability limits." Id. Thus, to assure that informed UIM waivers are obtained by insurers in a particularized,

16

uniform manner, the MVFRL contains an explicit remedy of contract reformation where there are no UIM rejection forms or the forms themselves are non-compliant with the statute. <u>See</u> <u>Lewis</u>, 793 A.2d at 148, 152.

On the other hand, the detailed requirements for rejections of UIM coverage are not applicable to elections of UIM coverage under Section 1734. <u>Orsag</u>, 15 A.3d at 900 (discussing <u>Lewis</u>, 793 A.2d at 153). Here, there is no dispute that this matter is a UIM limits-election case under Section 1734, not a waiver/rejection case under Section 1731(c.1). [6] Accordingly, per <u>Lewis</u>, the court must apply Section 1734 with the cost-containment goals of the General Assembly in mind. <u>See</u> 793 A.2d at 154 ("While cost containment is not the only objective of the statute, it has become an increasingly significant one, and it is apparent that the General Assembly has been employing the vehicle of free consumer choice with greater latitude and frequency in furtherance of this objective."). Furthermore, the court must be mindful that Section 1731(c.1) does

---

[6] Plaintiffs argue that summary judgment is warranted in their favor based on Nationwide's failure to produce proof of a written reduction of UIM benefits under the One Product policy. (Doc. 18, Pl. Br. in Supp. at 5–8). Plaintiffs rely upon case law addressing the obligations of insurers under Section 1731(c.1) regarding UIM rejection. <u>Id.</u> Per <u>Lewis</u>, "[a]lthough the General Assembly clearly designed both Sections 1731 and 1734 as relating to UM/UIM coverage, it is just as plain that it directed each provision to a different form of election: Section 1731(c.1) to outright waiver/rejection of coverage…and Section 1734 to selection of specific limits[.]" 793 A.2d at 153. "[T]his subject-matter distinction heightens the significance of the attachment of technical requirements and corresponding remedial provisions to Section 1731 waiver/rejection but not to Section 1734 specific-limits designation." <u>Id.</u> Consequently, plaintiffs' arguments about Nationwide's burdens of production have less weight because this is not a waiver/rejection case.

not otherwise impede enforcement of an insured's Section 1734 election of UIM coverage either equal to or below bodily injury liability limits. Id. at 155.

As in Lewis, there is an additional provision of the MVFRL to consider, 75 PA. CONS. STAT. § 1791.[7] Id. at 153–54.  Section 1791 of the MVFRL "sets forth a particular notice that insurance companies may provide applicants to advise them of available benefits and coverage limits." Barnard v. Travelers Home & Marine Ins. Co., 216 A.3d 1045, 1053 (Pa. 2019).  This provision ultimately "occupies a central role as it concerns the conveyance of information regarding, *inter alia*, the insurer's obligation to offer…UIM coverage of up to at least $100,000 per person and $300,000 per accident, and of the insured's option to purchase coverage carrying lower benefit limits." Lewis, 793 A.2d at 153.  "If an insurance company provides this notice '*at the time of application for original coverage*…no other notice or rejection shall be required.' " Barnard, 216 A.3d at 1053 (quoting 75 PA. CONS. STAT. § 1791) (emphasis added).  Rather, by the terms of Section 1791, "an insured's awareness of the benefits and limits available under the financial responsibility provisions of the MVFRL *is presumed* upon the provision of such notice[.]" Id. at 153 (emphasis added).  Moreover, an

---

[7] Sections 1731 and 1734 are also to be read *in pari materia* with Section 1791 of the MVFRL. See Salazar v. Allstate Ins. Co., 702 A.2d 1038, 1041 (1997) (Sections 1731, 1791, and 1791.1); Motorists Ins. Companies v. Emig, 664 A.2d 559, 567–70 (Pa. Super. Ct. 1995) (Sections 1734 and 1791).

insured's signature on a Section 1791 notice form or their payment of any renewal premium evidences their actual knowledge and understanding of the availability of benefits and limits as well as the benefits and limits they selected. See 75 Pa. Cons. Stat. § 1791 (indented paragraphs following § 1791(6)).  This Section 1791 presumption is not dispositive, however, "unless the insured actually selects coverage in writing in conformity with [Section] 1734." Erie Ins. Exch. v. Larrimore, 987 A.2d 732, 738 (Pa. Super. Ct. 2009) (citing Emig, 664 A.2d at 569.

In light of the above cases, Section 1731(a) makes the purchase of UIM coverage optional, Section 1734 allows insureds to select whether their UIM coverage is issued in an amount equal to or less than their bodily injury liability limits, and Section 1791 "permits an insurer to rely on elections and notices regarding the availability of UIM benefits at the time of application for original coverage." Goodville Mut. Cas. Co. v. McNear, 332 A.3d 849, 856 (Pa. Super. Ct. 2025) (citing 75 Pa. Cons. Stat. § 1791; Koch v. Progressive Direct Ins. Co., 280 A.3d 1060, 1068 (Pa. Super. Ct. 2022); Smith v. Hartford Ins. Co., 849 A.2d 277, 281 (2004)) (emphasis removed).

## 2. Sections 1731, 1734 and 1791 of the MVFRL As Applied to this Case

Having reviewed the relevant provisions of the MVFRL above, the court turns to the parties' positions.  Of significance, plaintiffs and Nationwide take two

different approaches to Section 1791 in their arguments. Nationwide pastes the entire 1791 Notice signed by Brian Davis into its brief in support of its summary judgment motion. (Doc. 22 at 2). As best as the court can tell, plaintiffs did not reference Section 1791 in any of their briefs. Rather, in their response to Nationwide's statement of material facts, plaintiffs admit that Brian Davis first elected UIM coverage limits in the amount of $15,000 per person on August 31, 2001 under the prior policy and signed the 1791 Notice form which outlined the coverage limits available for different types of coverage under the policy with Nationwide, including UIM coverage. (Doc. 25, Pl. Resp. to Def. SOF ¶ 3). Like the UIM reduction documents signed by Brian Davis in 2019 and years prior, plaintiffs do not challenge the form or content of the 1791 Notice itself.[8] Plaintiffs also do not argue that Nationwide was required to re-comply with Section 1791 when it implemented the One Product policy.

Nationwide has supplied undisputed evidence of the 1791 Notice form and various written requests for lower UIM coverage that Brian Davis signed over the course of his time as a Nationwide insured. The language of Section 1791 "clearly states [that] once notice of available coverages and the possibility of

---

[8] Brian Davis denies that his signature evidences his understanding of the limits he selected. (Doc. 25, Pl. Resp. to Def. SOF ¶ 3). But under the MVFRL, his signature on that 1791 Notice evidences his actual knowledge and understanding of the benefits and limits he selected. 75 PA. CONS. STAT. § 1791.

rejection of those coverages has been given, no further rejection notice or form is required." Smith, 849 A.2d at 281.  As detailed above, Section 1734 addresses an affirmative selection of UIM limits by an insured without the remedial provisions provided by the UIM rejection provisions of Section 1731(c) and (c.1). Section 1734 mandates no specific form at all, only a signature and an express designation of UIM limits.  With a valid 1791 Notice form executed by Brian Davis and a signed document electing a lower level of UIM benefits under Section 1734 in the amount of $15,000 per person or $30,000 per occurrence, Nationwide was thus entitled to presume that Brian Davis's decision to lower his UIM benefits below his bodily injury limits through a sign-down form "remained effective until affirmatively changed[.]" McNear, 332 A.3d at 859 (citing 75 PA. CONS. STAT. §§ 1734, 1791; Barnard, 216 A.3d at 1053; Koch, 280 A.3d at 1067)).

Pennsylvania courts have addressed various scenarios involving the validity of written requests to lower UIM benefits under Sections 1731, 1734, and 1791.  For example, insurers do not need to re-comply with Section 1731 and Section 1734 and obtain a new written sign-down of UIM coverage when insureds reduce their bodily injury liability coverage under a policy; a previous valid request for reduced UIM coverage is sufficient. Blood, 934 A.2d at 1227; Nationwide Mut. Ins. Co. v. Catalini, 18 A.3d 1206, 1212 (Pa. Super Ct. 2011). Similarly, the addition of vehicles to a policy does not require an insurer to obtain

a new written UIM reduction from their insured.  <u>McNear</u>, 332 A.3d at 858; <u>see also</u> <u>Geist</u>, 49 F.4th at 864.[9]  However, "if an insured purchases new UM/UIM coverage following an initial rejection of UM/UIM coverage, the insurer must provide UM/UIM coverage equal to the bodily injury liability coverage, unless the insured validly requests lower limits of coverage pursuant to section 1734." <u>Weilacher v. State Farm Mut. Auto. Ins. Co.</u>, 65 A.3d 976, 986 (Pa. Super. Ct. 2013).

In this case, plaintiffs did not purchase new UIM coverage following an initial rejection of such coverage.  Plaintiffs never rejected UIM coverage at all.  Rather, here as a named insured, Plaintiff Brian Davis elected UIM limits below his bodily injury limits on January 25, 2019, and then did not make any changes to such coverage within the relevant timeframe up to the date of the accident.

---

[9] Although the ultimate conclusions were the same in <u>McNear</u> and <u>Geist</u>, the analyses of the Superior Court of Pennsylvania and the Third Circuit Court of Appeals diverge significantly.  In <u>Geist</u>, the Third Circuit relied upon the language of Sections 1731 and 1734 in reaching its conclusion. 49 F.4th at 864–65.  On the other hand, in <u>McNear</u>, the Superior Court also relied upon a line of cases interpreting 75 PA. CONS. STAT. § 1791, which permits an insurer to presume that the insured is aware of the benefits and limits available under the MVFRL and a given policy. 332 A.3d at 855–56 & n.10 (discussing 75 PA. CONS. STAT. § 1791, <u>Koch</u>, 280 A.3d at 1067; <u>Smith</u>, 849 A.2d at 280–81; <u>Lewis</u>, 793 A.2d at 153–54).  As for the effect of this divergence on this case, <u>Geist</u> considered Section 1731 and 1734 but did not reference Section 1791 at all. 49 F.4th at 864–65.  <u>McNear</u> stands for the proposition that Pennsylvania courts must consider Sections 1731, 1734 *and* Section 1791 in reviewing whether new written requests for reduction of UIM benefits are needed. 332 A.3d at 855 ("When construing the obligations of an insurer under sections 1731 and 1734, our courts have also looked to section 1791…and a given policy.").  Based on the emphasis placed on Section 1791 in <u>McNear</u> and a footnote reiterating the Superior Court's jurisprudential independence from federal decisions like <u>Geist</u>, <u>id.</u> at 851, n.5, the court considers the implications of Section 1791 in this memorandum.

Plaintiffs continued to renew their policies with Nationwide every six months with the reduced UIM coverage that Brian Davis selected in January 2019 until the date of the accident, including even following when the policy number changed. This record is devoid of any facts indicating that plaintiffs ever desired to alter their selection and pay for UIM coverage equivalent to their bodily injury liability coverage before or after implementation of the One Product policy. See Blood, 934 A.2d at 1227. Plaintiffs accepted the One Product policy and continued to pay the renewal premiums for UIM limits below their bodily injury limits. The Nationwide policies were never cancelled, and plaintiffs' auto insurance coverage never lapsed. Plaintiffs continued to rely upon the One Product policy for their "financial responsibility" under the MVFRL. Thus, under Pennsylvania law, plaintiffs are not entitled to more UIM coverage than the coverage they specifically requested and paid for. Orsag, 15 A.3d at 901; Eachus, 306 A.3d at 936. Consequently, Nationwide's motion for summary judgment will be granted.

### 3. Even if Nationwide's One Product Initiative Changed Policy Terms, the Above Analysis Leads to the Same Result

Although the court has concluded that Pennsylvania law favors Nationwide in this dispute, some additional discussion is necessary. Specifically, plaintiffs request that this court fully adopt the Honorable J. Nicholas Ranjan's analysis in McGuire regarding the distinctions between prior Nationwide policies and the One Product policies and extend his rationale to the particular facts of this case.

As addressed next, this case involves different statutory provisions of the MVFRL than those considered in <u>McGuire</u>.

Specifically, <u>McGuire</u> dealt with stacking waivers.  When an individual purchases UIM coverage for multiple vehicles, " 'stacking' allows the insured to aggregate the UIM…coverage limits on all of [their] insured vehicles to increase the amount of coverage available in the event of an accident." <u>Barnard</u>, 216 A.3d at 1047.  The default rule in Pennsylvania calls for stacking of UIM benefits per each vehicle on the policy. <u>See</u> 75 PA. CONS. STAT. § 1738(a).  Under Pennsylvania law, however, the first named insured on a policy may waive stacking of their UIM coverage so long as the rejection form complies with certain requirements, including statutorily prescribed language. 75 PA. CONS. STAT. § 1738(b), (d)(2), (e).

Looking at the statutory text of the pertinent provisions, Sections 1731(a) and 1734 use different words to trigger an insurer's obligations applicable to sign-downs versus the language used in Section 1738(c) for stacking waivers.  An insurer's "delivery" or "issuance" of a policy triggers its obligation to provide UIM coverage. <u>Geist</u>, 49 F.4th at 865 (citing 75 PA. CONS. STAT. § 1731(a); <u>Blood</u>, 934 A.2d at 1226)) (cleaned up).  "Section 1734, in turn, provides a process that governs how much coverage that insurer must provide when it '*issue[s]* a policy.' " <u>Id.</u> (quoting <u>Blood</u>, 934 A.2d at 1226) (emphasis in original) (further citation and

explanatory parenthetical omitted).  "Once an insurer receives a signed election

from the insured that includes 'an express designation of the amount of coverage

requested,' it may *issue that policy* with the insured's requested limit." Id. (quoting

Orsag, 15 A.3d at 901; Lewis, 793 A.2d at 153) (emphasis in original) (further

citation omitted).

As for the statutory language applicable to stacking, an insured

"purchasing" UIM coverage "for more than one vehicle under a policy shall be

provided the opportunity" by an insurer "to waive the stacked limits of

coverage[.]"[10] 75 PA. CONS. STAT. § 1738(c).  Pennsylvania law thus presumes

that stacking applies unless an insured waives it by executing a stacking waiver

containing the language provided in Section 1738(d). State Auto Prop. & Cas.

Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 90 (3d Cir. 2009).  In the absence of a

valid stacking waiver, Section 1738 provides insureds with the remedy of stacked

UIM coverage. See Sackett v. Nationwide Mut. Ins. Co., 919 A.2d 194, 202 (Pa.

2007) ("Sackett I"), modified on reargument, 940 A.2d 329 ("Sackett II").

Consequently, McGuire explored the implications of the term "purchase"

alongside the case law construing that word before determining that the

imposition of One Product policy terms with a different scope of coverage

---

[10] The reference to "purchasing" pertains to purchase of UIM coverage rather than the
underlying policy itself.  Franks v. State Farm Mut. Auto. Ins. Co., 292 A.3d 866, 872 (Pa.
2023).

amounted to a "purchase," i.e., the trigger of Nationwide's obligation to obtain a new stacking waiver from their insured at the risk of the policy being reformed to provide for higher UIM coverage. 2024 WL 4150098 at *3–10.  To get there, McGuire entertained arguments from the parties about whether the One Product policy in that case was a "new" policy or a "renewal" policy.  But McGuire only considered whether the One Product policy was a "renewal" or not for the purpose of stacking waivers.[11]  See id. at *4 ("applying the logic of the Pennsylvania Supreme Court's prior decisions, obtaining a policy with a different scope of coverage—even if it's the result of a reduction in coverage—is the "purchase" of something the policyholder didn't already possess, i.e., an entirely new policy. Conversely, obtaining a renewal of a policy, where the scope of coverage is the same, isn't a "purchase.") (footnotes omitted).

Judge Ranjan also addressed important distinctions between Section 1738 and Sections 1731 and 1734 after Nationwide filed a motion for reconsideration in McGuire.  Specifically, Nationwide subsequently argued in that case that "changes to an insurance policy do not constitute a 'purchase' of a new policy." 2025 WL 723203, at *3.  In response, Judge Ranjan noted that Nationwide's

---

[11] In addition to the distinguishable statutory provisions, McGuire also involved a different factual scenario.  In McGuire, plaintiff's father executed numerous stacking waivers that Nationwide sought to enforce against plaintiff. Id. at *1–2.  Here, Plaintiff Brian Davis requests that the court invalidate a UIM sign-down form that he signed himself.

arguments stemmed from the MVFRL provisions relevant in this case, which he referred to as "an entirely different part" of the statute. Id.  In denying the motion for reconsideration, Judge Ranjan made clear that his decision in McGuire was based on considerations of Section 1738 regarding the "purchase" of UIM coverage, as opposed to Sections 1731 and 1734, which tie the election of UIM coverage limits to a policy being "delivered or issued for delivery." See id. at *3. Based on the court's explanations in the subsequent McGuire opinion distinguishing the stacking provisions in Section 1738, that case has no bearing on the issues in this case, which involve the application of Sections 1731, 1734, and 1791.[12]

Furthermore, the court disagrees with plaintiffs that McGuire helps predict how the Supreme Court of Pennsylvania would rule if faced with the issues in this case.  Outside of the stacking waiver context, Pennsylvania courts "have held that initial insurance selections and rejections remain effective regardless of subsequent changes to the insurance policy[.]" Barnard, 216 A.3d at 1053.  Such

---

[12] Since it involved stacking waivers under Section 1738, McGuire did not even need to address the implications of the Section 1791 notice presumption under the facts of that case. See Barnard, 216 A.3d at 1053 ("Critically, the notice contained in Section 1791 does not discuss stacking. Thus, Section 1738's express requirement that an insurance company offer an insured the opportunity to waive stacking is an additional obligation outside the purview of Section 1791. Accordingly, we cannot assume that, like Section 1791, Section 1738 requires insurance companies to offer rejection forms only when an individual initially applies for a policy.").

selections remain effective even when an insurance company transfers a policy to a subsidiary or an affiliate. See Breuninger v. Pennland Ins. Co., 675 A.2d 353, 355 (Pa. Super. Ct. 1996); see also Selective Ins. Co. of Am. v. Novitsky, 366 F. Supp. 3d 638, 658 (M.D. Pa. 2019), aff'd, 796 F. App'x 100 (3d Cir. 2020). Furthermore, under Pennsylvania law, it is error to conclude that "when something more than a 'cosmetic change' is made in an insurance policy, it constitutes a new policy as a matter of law." Smith, 849 A.2d at 280. According to Smith: "There is no statutory authority for such a rule, nor can such a rule be discerned in any prior case law." Id. Rather, Section 1791 "indicates just the opposite[.]"[13] Id.

---

[13] Decisions of intermediate Pennsylvania appellate courts receive significant weight in the absence of an indication that the highest state court would rule otherwise. SodexoMAGIC, LLC, 24 F.4th at 204 (citations and quotation marks omitted). The Supreme Court of Pennsylvania has referred to the Superior Court's analysis in Smith on three occasions. It has referred to portions of the Smith opinion as dicta but has not expressly disavowed the statements cited in the above paragraph. Blood, 934 A.2d at 1222–23. Additionally, in Sackett I, the Supreme Court of Pennsylvania determined that the discussion in Smith "was required by the relevant statutory language," i.e. Section 1791. 919 A.2d at 198. Nonetheless, the Sackett I court did not apply Smith because the former concerned stacking waivers under Section 1738 and the latter concerned Sections 1731 and 1791. Id. Most recently in Barnard, the state supreme court reiterated that "initial insurance selections and rejections remain effective regardless of subsequent changes to the insurance policy," and cited Smith in a footnote. 216 A.3d at 1053 & n. 8. Barnard found the overall reasoning in Smith to be unpersuasive in that case because Barnard, like Sackett I, involved stacking waivers. 216 A.3d at 1053 & n. 8. Thus, citing both Sackett I and Barnard, the Superior Court of Pennsylvania continues to apply Smith as good law in the Commonwealth. Koch, 280 A.3d at 1068; McNear, 332 A.2d at 855–58 (applying Smith to a Section 1734 sign-down case). Given that the Pennsylvania Supreme Court has not been critical of statements in Smith rejecting the "new policy theory" advanced in that case with numerous opportunities over the last twenty years to do so, the court uses Smith to predict how the highest state court would rule in this case.

When forecasting state law while sitting in diversity jurisdiction, the court must afford decisions of other federal courts proper regard, but not conclusive effect. See McKenna, 622 F.2d at 662 (citation omitted). The court must also take special care to apply state law and not to participate in an effort to change it. See id. (citation omitted). Federal courts must adhere to the MVFRL's text. Geist, 49 F.4th at 866   And like the Supreme Court of Pennsylvania, federal courts are also "without authority to write new requirements into the MVFRL where the statutory language is without ambiguity." Blood, 934 A.2d at 1227.

In this case, plaintiffs seek to change state law, that is, import their extensive arguments about "renewal" policies and "new" policies into Sections 1731(a) and 1734, and, by extension, Section 1791. The court, however, cannot extend the analysis conducted in McGuire about whether the One Product policy was a "renewal" or not or otherwise endorse its application in this case. [14] The

---

[14] In his analysis in McGuire, Judge Ranjan relied on the definition of "renewal" from Act 68 of 1998, 40 PA. STAT. § 991.2001, as amended, which addresses automobile insurance issuance, renewal, cancellation, and refusal to renew a policy. 2024 WL 4150098, at *4, n.8. The definitions given to words and phrases like "renewal" or "to renew" in Act 68 are to be applied to words as they appear in that particular article. 40 PA. STAT. § 991.2001. Thus, in this district, the Honorable William J. Nealon concluded that the General Assembly did not design the definition of "renewal" to apply to the interpretation of the MVFRL, but only to provisions in Act 68. Standard Fire Ins. Co. v. Poslusney, No. CV 3:06-2357, 2008 WL 11367546, at *2 (M.D. Pa. July 28, 2008). Independent of Poslusney, Act 68, "shall apply only to "(1) that portion of a policy of automobile insurance providing bodily injury and property damage liability, comprehensive and collision coverages; and (2) to the policy's provisions, if any, relating to medical payments and uninsured motorists coverage." 40 PA. STAT. § 991.2002. Consequently, by express omission, the General Assembly did not intend for provisions of Act 68, i.e., the "renewal" definition, to apply to policy provisions regarding underinsured motorists coverage. Furthermore, the text of the MVFRL does not reference Act 68, only its predecessor

court will not write into the MVFRL that "the change here is a delivery or issuance of a policy" under Section 1731. Blood, 934 A.2d at 1227; see also Smith, 849 A.2d at 280. This court is without authority to change the text of Sections 1734 and 1791 to impose new requirements on Nationwide in the face of unambiguous statutory language relieving them of obligations once an insured provides a written, signed request electing UIM coverage in amounts lower than the limits of liability for bodily injury. See Blood, 934 A.2d at 1226–27; see also McNear, 332 A.3d at 854–859. The court also cannot eliminate the freedom of choice provided to insureds by the General Assembly when it amended the MVFRL to make UIM coverage optional. See Lewis, 793 A.2d at 154. Plaintiff Brian Davis made a valid election to reduce his UIM coverage below his bodily injury liability limits. Plaintiffs thus requested and paid lower policy premiums than if their UIM coverage was equal to that level. They paid renewal premiums for such coverage under both policy numbers. Plaintiffs' choice of limited UIM coverage thus binds them in this litigation.

---

statute, the Automobile Insurance Policy Act, 40 PA. STAT. §§ 1008.1, *et seq.* (repealed). See 75 PA. CONS. STAT. §§ 1702, 1705(e), 1799.3(f). Even then, the provisions referencing Act 68's predecessor only refer to cancellations, refusals to write, and refusals to renew. Id. Plaintiffs' policy was never cancelled and Nationwide never refused to write or renew a policy. For these additional reasons, the Act 68 definition of "renewal" should not be considered here and thus McGuire has no bearing on the outcome of this case.

### 4. Pennsylvania Law Does Not Support Reformation Under These Circumstances

The court will make a few final points regarding plaintiffs' motion for summary judgment. Specifically, plaintiffs request reformation of the One Product policy.[15] (Doc. 17-1, Proposed Order). Sections 1731(a) and 1734 do not contain an explicit remedy. However, several decisions of the Pennsylvania Superior Court advance that: "[i]f there is not proper written request for lower limits in conformity with § 1734, then the UM and UIM coverages are deemed equal to the bodily injury liability limits." Larrimore, 987 A.2d at 743 (citing

---

[15] In support of their motion, plaintiffs argue that the January 25, 2019 sign-down form is ambiguous because the document refers to "my policy" meaning the prior policy number. (Doc. 18, Pl. Br. in Supp. at 9–11). Plaintiffs rely on Bricker v. State Farm Mut. Auto. Ins. Co., No. 102 MDA 2014, 2014 WL 10803085 (Pa. Super. Ct. Aug. 22, 2014) to support their argument that the January 25, 2019 UIM reduction form is ambiguous. Bricker involved a change in policy numbers, but the decision turned on the lack of a record regarding whether the new policy number was the result of a renewal or a replacement policy. 2014 WL 10803085, at *5.

The factual record here is well-developed. For example, when asked whether he read the disputed sign-down form in his deposition, Plaintiff Brian Davis testified "[p]robably not." (Doc. 20-7, Pl. Ex. 7 76:23–77:14). Plaintiff also testified he did not recall reading any of the documents that he had been asked to sign for insurance companies. (Id. 77:15–18). As for the policy number on this document, plaintiff testified that he would not have read the policy number before signing. (Id. 79:1–4). According to plaintiff, he was unaware that his policy number changed until after the accident. (Id. 52:22–53:1).

The MVFRL does not require that a written, signed election of UIM coverage contain a policy number. 75 PA. CONS. STAT. § 1734. As for the record regarding the reasons for the change in policy numbers, which prevented disposition on summary judgment in Bricker, those matters are also well-developed in this case. Applying Pennsylvania law to the facts, the Nationwide policies continued to provide plaintiffs with the same optional UIM coverage they continuously enjoyed in compliance with the requirements imposed on both insurers and insureds under the MVFRL. The changes in this case do not justify Nationwide's re-compliance with Sections 1731(a) and 1734. Consequently, the operative sign-down form is not ambiguous.

Nationwide Mut. Ins. Co. v. Heintz, 804 A.2d 1209, 1216 n.7 (Pa. Super. Ct.

2002); Emig, 664 A.2d at 569; see also Weilacher, 65 A.3d at 988; Hayes v.

Harleysville Mut. Ins. Co., 841 A.2d 121, 126 (Pa. Super. Ct. 2003).  Decisions in

this district also support reformation as a remedy where insureds never

requested that their UIM coverage be less than their liability coverage. See

Transguard Ins. Co. of Am. v. Hinchey, 464 F. Supp. 2d 425, 436 & n.8 (M.D. Pa.

2006); Cebula v. Royal & SunAlliance Ins. Co., 158 F. Supp. 2d 455, 461 (M.D.

Pa. 2001).

As for the Pennsylvania Supreme Court, at least four decisions support the

proposition that it would not read the remedy of reformation found in Section

1731(c.1) into Sections 1731(a) and 1734, at least where a plaintiff has

previously supplied a written, signed request for lower UIM limits to their insurer.

See Orsag, 15 A.3d at 901[16]; Blood, 934 A.2d at 1223, n.3, 1224, 1226–27

---

[16] The following commentary from Orsag is particularly appropriate in light of the undisputed
facts of this case:

> An insurance company is only required to offer UM/UIM coverage in
> an amount equal to the insured's bodily injury coverage, which an
> insured is free to either reject or accept. If the insured desires the
> coverage, he must then select which level of coverage he desires. If
> the insured wants UM/UIM coverage in an amount equal to his bodily
> injury coverage, he can select that option and pay the corresponding
> premium. If…the insured did not desire UM/UIM coverage identical
> to bodily injury coverage, he could select a lesser amount and pay a
> reduced premium.  It is difficult to fathom that an insurance applicant
> who willingly selects reduced UM/UIM coverage would somehow
> rescind that selection if merely informed the insurance company had
> to offer coverage in the same amount as bodily injury coverage. It is

(distinguishing <u>Cebula</u> and finding no remedy where insureds previously elected reduction of UIM limits below bodily injury limits); <u>Lewis</u>, 793 A.2d at 153–54 (distinguishing provisions of Sections 1731(c.1) and 1734); <u>Salazar</u>, 702 A.2d at 1044 (finding no remedy after insurer complied with Sections 1731 and 1791, but did not comply with the requirements of 75 PA. CONS. STAT. § 1791.1).   Here, as Nationwide insureds, plaintiffs executed several written requests for lower UIM benefits, as far back as August 2001.[17]   Consequently, the court predicts that the Pennsylvania Supreme Court would not reform the contract as plaintiffs request and would decide the issues at hand in favor of Nationwide.   Plaintiffs' motion for summary judgment will thus be denied, Nationwide's motion for summary judgment will be granted, and summary judgment will thus be entered in defendant's favor.

---

> not as if the insurance company is hiding free, additional coverage; the cost of premiums could increase significantly, which, presumably, is what the applicant was hoping to avoid by initially requesting the reduced coverage.

15 A.3d at 901.

[17] Nationwide emphasizes that Plaintiff Brian Davis also signed another UIM reduction form under the One Product policy on November 8, 2022, or approximately two months after the accident. (See Doc. 21-24, Def. MSJ Ex. S at ECF p. 25).  This fact is immaterial and has not been considered by the court in disposing of the cross-motions.

**Conclusion**

     For the reasons set forth above, plaintiffs' motion for summary judgment will be denied and defendants' motion for summary judgment will be granted. The Clerk of Court will be directed to issue a judgment in Nationwide's favor and close this case.  An appropriate order follows.

Date: _9/10/25_           _____

                                JUDGE JULIA K. MUNLEY
                                United States District Court